IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JOHNNY DWAYNE ADAMS, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:12cv00462 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| SOUTHWEST VIRGINIA | ) | |
| REGIONAL JAIL, *et al.*, | ) | By: Norman K. Moon |
|     Defendants. | ) | United States District Judge |

Johnny Dwayne Adams, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. 1983, alleging that the defendants denied him adequate medical treatment. The defendants each moved for summary judgment, arguing that Adams failed to properly exhaust administrative remedies, and Adams responded thereto, making this matter ripe for disposition. I find that Adams did not fully exhaust available administrative remedies before filing this action and, therefore, will grant the defendants' motions for summary judgment.

I.

Adams alleges that, while housed at the Southwest Virginia Regional Jail ("SWVRJ"),[1] defendants Dr. Ofogh and Nurse Rick Niece denied him adequate medical treatment concerning his leg, hip, and back pain, difficulty walking, pain medication, and referral to other doctors.[2]

---

[1] I note that Adams is currently housed at Bland Correctional Center.

[2] Adams also names the "Medical Department at Southwest Virginia Regional Jail Authority" as a defendant to this action. However, the Medical Department is not a "person" subject to suit in a § 1983 action and, therefore, Adams cannot maintain his action against this defendant. To state a cause of action under § 1983, a plaintiff must allege facts indicating that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42 (1988). Use of the term "medical department," or the equivalent, as a name for an alleged defendant, without the naming of specific staff members, is not adequate to state a claim against a "person" as required in § 1983 actions. *See Singletary v. Assistant Warden Fallen*, No. 0:11-543, 2011 U.S. Dist. LEXIS 70194 (D.S.C. June 3, 2011) ("Medical Staff is not a proper defendant upon whom the United States Marshals Service could effect service of process, and against whom relief could be granted by this court."); *Barnes v. Baskerville Corr. Cen. Med. Staff*, No. 3:07CV195, 2008 U.S. Dist. LEXIS 48726, 2008 WL 2564779 (E.D. Va. June 25, 2008) (finding that medical staff is not a specified person for purposes of § 1983); *Ferguson v. Morgan*, No. 90 Civ. 6318, 1991 U.S. Dist. LEXIS 8295, 1991 WL 115759 (S.D.N.Y. June 20, 1991) (concluding that the

Prior to filing this action, Adams filed at least eight grievances concerning his medical treatment by the defendants.³ Adams did not appeal the responses to any of his grievances.

The defendants have moved for summary judgment, arguing that Adams failed to exhaust administrative remedies available to him under the grievance procedure at SWVRJ because he failed to appeal any of the grievance responses. The defendants further allege that Adams was aware of the grievance procedure and was specifically advised in the grievance responses at least three times of the availability of an appeal.

Although he recognizes that he did not appeal his grievance responses, in response to defendants' motions for summary judgment, Adams argues that he did exhaust administrative remedies because he was told by three jail staff, Officer Haga, Sgt. Sabo, and Lt. Sargent, that he "had done all he could do and they could not overrule the doctor." In addition, Adams alleges that defendant Niece told Adams that "the medical department [is] independent from the jail and no one could tell them what to do." Adams alleges that he "suffers from a traumatic brain injury[]" and, thus jail staff was "negligent" in assisting him with the jail grievance process. Adams asserts that he has short and long-term memory loss, he was confused, and jail staff never took the time to explain the computer kiosk or the grievance process "as they should." Adams provides an affidavit from another inmate who states that he was present when Sgt. Sabo told Adams that "medical was not part of the jail and they could do nothing to help him."

The grievance procedure at SWVRJ provides that an inmate seeking to file a grievance must do so within seven days of the incident about which he is complaining, except where there

---

"Otisville Correctional Facility Medical Staff" is not a person for purposes of § 1983). Accordingly, I will dismiss Adams' claims against the Medical Department.

³ Of these eight grievances, two concerned his request for tennis shoes, four concerned the reduction in his pain medications, one concerned a referral to another doctor, and one concerned back pain.

2

is good reason for the delay. The grievance officer must process the grievance within nine days. The inmate then has seven days from receipt of the response to appeal the grievance to the Chief of Security (with the rank of Captain), who processes the appeal or convenes a review board. The grievance procedure also provides that "[i]mpaired or disabled inmates may use the grievance procedure by verbally requesting assistance through the Housing Officer" and that questions regarding the policy should be addressed to the Chief of Security. I note that Adams does not allege that Officer Haga, Sgt. Sabo, or Lt. Sargent are either the Housing Officer or the Chief of Security.

## II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250. In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

3

### III.

The defendants maintain that Adams failed to exhaust his administrative remedies by appealing the responses to his grievances. I find that Adams did not exhaust available administrative remedies in accordance with SWVRJ's grievance procedure and, therefore, I will grant the defendants' motions for summary judgment.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). The exhaustion requirement "allow[s] a prison to address complaints about the program it administers before being subjected to suit, reduc[es] litigation to the extent complaints are satisfactorily resolved, and improv[es] litigation that does occur by leading to the preparation of a useful record." *Id.* at 219. An "untimely or otherwise procedurally defective administrative grievance" does not satisfy the PLRA's exhaustion requirement. *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006).

Prison officials may not take unfair advantage of the exhaustion requirement, however, and a remedy becomes "unavailable" if prison employees do not respond to a properly filed grievance, or if they otherwise act to prevent a prisoner from exhausting his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Thus, a court may excuse a prisoner's failure to exhaust an administrative remedy if a prisoner, "through no fault of his own, was prevented from availing himself of the remedy. *Id.* The burden of showing that administrative remedies were unavailable lies with the plaintiff. *See, e.g.*, *Graham v. Gentry*,

4

413 F. App'x 660, 663 (4th Cir. 2011) ("[I]n order to show that a grievance procedure was not 'available,' a prisoner must adduce facts showing that he was prevented, through no fault of his own, from availing himself of that procedure.") (citing *Moore*, 517 F.3d at 725).

A prisoner must exhaust his administrative remedies even if the specific relief he seeks in his complaint is not available through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and "even where the inmate claims that exhaustion would be futile," *Reynolds v. Doe*, 431 F. App'x 221, 222 (4th Cir. 2011). Further, a claim that plaintiff was ignorant of the process due to administrators' purported failures has been rejected by numerous courts. *See, e.g., Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 221-22 (6th Cir. 2011) (rejecting inmate-plaintiff's argument that "administrative remedies were not available to him" because administrators "failed to explain its grievance policy or the PLRA to him"); *id.* at n.2 ("A plaintiff's failure to exhaust cannot be excused by ignorance of the law or the grievance policy.") (collecting cases); *Twitty v. McCoskey*, 226 F. App'x 594, 596 (7th Cir. 2007) ("A prisoner's lack of awareness of a grievance procedure . . . does not excuse compliance."); *Graham v. Cnty. of Gloucester, Va.*, 668 F. Supp. 2d 734, 741 (E.D. Va. 2009) ("[A] prisoner's claim that the grievance system was unavailable to him because he lacked full knowledge of the specifics of the grievance process does not excuse or waive a failure to exhaust administrative remedies."); *Grady v. Winders*, No. 5:11CT3257-BO, 2012 U.S. Dist. LEXIS 144583, 2012 WL 4753313, at *2 (E.D.N.C. Oct. 4, 2012) (granting Rule 12(b)(6) motion to dismiss on failure to exhaust grounds where plaintiff argued "that while the facility did have grievance procedures, he was not aware of them."). Indeed, courts have specifically held that, even where a "prisoner claimed he had not been informed how to file a grievance or given an inmate handbook describing the procedure," if the plaintiff does not allege that the "respective correctional facility 'did anything

5

to frustrate or prevent him from utilizing [the grievance] procedures,' . . . 'there is no authority for waiving or excusing compliance with PLRA's exhaustion requirement.'" *Simmons v. Stus*, 401 F. App'x 380, 381 (10th Cir. 2010) (quoting *Gonzales-Liranza v. Naranjo*, 76 F. App'x 270, 273 (10th Cir. 2003)). Thus, any contention that plaintiff's failure-to-exhaust should be excused merely on the basis of his ignorance about the process fails.

In this case, the SWVRJ grievance procedure provides for an appeal after an unsatisfactory grievance response. There is no dispute that Adams did not file an appeal to any of his relevant grievance responses. Adams has not shown that any jail employee did anything to frustrate or prevent him from utilizing the grievance procedure. Adams' claimed ignorance of the grievance process is an insufficient basis for me to find that the grievance procedure was unavailable to him. Accordingly, I find that Adams' claims are unexhausted and, therefore, will grant defendants' motions for summary judgment.

**ENTER**: This 4th day of August, 2014.

                                                                                  _____
                                                                                  NORMAN K. MOON
                                                                                  UNITED STATES DISTRICT JUDGE